**OZBURN–HESSEY LOGISTICS, LLC, Petitioner**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 11–1482, 12–1063.

United States Court of Appeals, District of Columbia Circuit.

May 1, 2015.

Benjamin H. Bodzy, Baker, Donelson, Bearman, Caldwell & Berkowtiz, PC, Nashville, TN, Stephen Dorr Goodwin, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Memphis, TN, for Petitioner.

Linda Dreeben, Nicole Lancia, Ruth E. Burdick, John H. Ferguson, Jill A. Griffin, Barbara Ann Sheehy, National Labor Relations Board, Washington, DC, for Respondent.

Before: ROGERS, TATEL and SRINIVASAN, Circuit Judges.

### JUDGMENT

The petition for review and cross-petition for enforcement were considered on the record from the National Labor Relations Board and on the briefs submitted by the parties. *See* Fed. R.App. P. 34(a)(2); D.C.Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the petition for review is denied and the Board's cross-petition for enforcement is granted.

The Board found that petitioner had violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3), respectively, by interrogating and threatening employees because of their union support and activities, and by denying overtime to Glenora Rayford and discharging Glorina Kurtycz immediately after coercively interrogating them because of their union sympathies and activities. Petitioner contends that the Board's findings are not supported by substantial evidence, principally urging that the court should disregard the ALJ's credibility determinations in view of petitioner's testimonial and documentary evidence. These challenges lack merit; we discuss some below. The Board's findings of section 8(a)(1) violations were supported by substantial evidence in the record, *see United Mine Workers of Am., Dist. 31 v. NLRB,* 879 F.2d 939, 942 (D.C.Cir.1989), and petitioner fails to show that the credibility determinations on which the Board relied were "patently insupportable," *Capital Cleaning Contractors, Inc. v. NLRB,* 147 F.3d 999, 1004 (D.C.Cir.1998) (internal quotation marks omitted). With respect to the section 8(a)(3) violations, the Board properly found, under its *Wright Line* test, *see NLRB v. Transp. Mgmt. Corp.,* 462 U.S. 393, 397, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), that the General Counsel showed petitioner's animus toward the union, and that petitioner failed to show by a preponderance of evidence that it would have taken the same action even in the absence of the protected activity. *Accord Laro Maint. Corp. v. NLRB,* 56 F.3d 224, 228 (D.C.Cir.1995).

Based on credited evidence, the Board reasonably found that petitioner violated section 8(a)(1) when several high ranking officials and managers coercively interro-

gated and threatened employees regarding their views and other employees' views about the union and their union activities, thereby tending to restrain those employees in the exercise of their section 7 rights:

1. Van Young, a human resources manager, and Karen White, a regional vice president, questioned Glenora Rayford in their offices about her support for the union and the union activities by her and employee Nichole Bledsoe. Rayford warned Bledsoe to be careful about supporting the union. Contrary to petitioner's view that Rayford voluntarily broached Bledsoe's union support and that White was expressing concern for an employee's welfare, the Board could reasonably conclude that, in context, the questioning about protected section 7 activities was unlawful. Even if, as petitioner maintains, neither manager explicitly referred to the union while questioning Rayford, there was substantial evidence, *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951), from which the Board could find that Rayford reasonably understood union activities to be the focus of the questioning.

2. The next day, as employee Helen Herron was leaving for a work · break, Young questioned her about the union activities of Rayford and other employees. Herron then asked for a union authorization card to "feel safer." The Board could reasonably find that Herron's request for the card out of concern for her *safety* indicated the interrogation was coercive. That petitioner views Herron's card request to be "evidence that the conversation was not coercive," Reply Br. 10, does not detract from the substantial evidence supporting the Board's conclusion, *see United Mine Workers*, 879 F.2d at 942.

3. A week after Rayford had been questioned by Young and White, her immediate supervisor, Manager Roy Ewing, interrogated Rayford about her union sympathies, threatened her with unspecified reprisal, and denied overtime opportunities to her because of her union views. *See Avecor, Inc. v. NLRB*, 931 F.2d 924, 931 (D.C.Cir.1991). Ewing accused Rayford of talking to other employees about the union, asked whether she supported the union, and warned that there would be "repercussions" if anyone found out about their conversation. He told Rayford she was unwanted in Ewing's part of the facility and that, contrary to ordinary practices, he would contact her if she was needed for future overtime work. Petitioner challenges the ALJ's credibility resolution, maintaining, without support, that Rayford should have been discredited because she delayed bringing her accusations to the union. But the ALJ found, in light of employee Carlos Shipp's credited testimony and Ewing's own e-mail, that Ewing had "no credibility" because he had lied under oath about a material fact, namely whether he met with employees individually about the union campaign. Petitioner thus fails to show patently insupportable credibility determinations.

The Board also reasonably found, based on credited evidence, that the general counsel had shown that petitioner, in denying Rayford the ability to work overtime, had acted based on her support for the union, and that petitioner failed to rebut that showing and violated section 8(a)(3). Petitioner maintains there was no adverse employment action because Rayford never requested overtime. The Board relied on evidence that Rayford had previously requested and been granted overtime, and only stopped when Ewing made it clear that doing so would be futile. Petitioner's authorities are inapposite because neither *Decca Limited Partnership*, 327 N.L.R.B. 980, 981 (1999), nor *Armstrong Machine Company, Inc.*, 343 N.L.R.B. 1149, 1178

(2004), involved employees who were told they could not seek a particular assignment. Petitioner fails to show Rayford was treated identically to other employees who requested and worked overtime.

The Board's findings of section 8(a)(1) and (3) violations with respect to employee Glorina Kurtycz are also supported by substantial evidence. When program manager Buddy Lowery first approached Kurtycz, she was not yet an open union supporter. Lowery, with an NLRB Notice in hand, told Kurtycz that she was "on [his] list" and threatened that union representation was "not going to happen." Kurtycz told Lowery that she thought the union was "good," and Lowery admitted he approached employees during work time because they were on his list of people he was told to talk to about the union campaign. Petitioner maintains that Lowery's statement that selecting the union would be futile was, at most, a *de minimis* violation of section 7 rights. *Yellow Enterprise Systems, Inc.*, 342 N.L.R.B. 804, 810 (2004), on which petitioner relies, involved the filing of new employment applications whereas here the Board could reasonably conclude that, in context, the interrogation of Kurtycz was a part of a series of coercive interrogations by managers to discourage union support shortly before the election and the section 8(a)(1) violation was not *de minimis*. Petitioner fails to show that crediting Kurtycz's testimony was patently insupportable. The ALJ discredited Lowery's "equivocal" and vague testimony about his inability to recollect important aspects of his interrogation, and credited Kurtycz's "unequivocal," detailed testimony. Petitioner speculates that Lowery had no motive to lie while Kurtycz had the stronger motive to lie, relies on discredited testimony, and inaccurately claims Kurtycz never reported the interrogation to another manager.

Similarly, petitioner's challenge to the Board's finding of a section 8(a)(3) violation fails. The Board could reasonably find the general counsel showed that immediately after her encounter with Ewing, Kurtycz was informed by an operations manager that she had been identified by other employees as passing out union authorization cards in the workplace during work hours. Kurtycz denied doing so, but was sent home for the day. As she was leaving, she saw a pro-union employee handing out union flyers and joined him for the rest of the afternoon. A manager saw them. The next day, Kurtycz was informed that because she had been passing out union authorization cards, her employment would be terminated for violating petitioner's no-solicitation policy. The Board reasonably concluded Kurtycz's union activity was a motivating factor in the termination of her employment. In the absence of any meaningful challenge by petitioner to the conclusion that Kurtycz was engaged in union activities and that petitioner knew that when it decided to terminate her employment, petitioner's attempt to show that Kurtycz would have been fired absent union activity fails. *See Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 423–24 (D.C.Cir.1996). The section 8(a)(1) violations were strong evidence of union animus. *See Teamsters Local Union No. 171 v. NLRB*, 863 F.2d 946, 956 (D.C.Cir.1988). Petitioner's evidence that it would have terminated Kurtycz's employment anyway consisted of an investigation that the Board could find, from credited evidence, was flawed. Manager Tidwell neither inquired into the basis for Young's recommendation of termination nor sought Kurtycz's side of the story before approving the termination. Given the evidence of the non-enforcement of the no-solicitation policy, the Board could reasonably find that petitioner's reason for the termination was pretextual. *See*

*Southwire Co. v. NLRB,* 820 F.2d 453, 460 (D.C.Cir.1987).

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41(a)(1).